High Meadows Park, Inc., an Illinois Corporation, et al., Plaintiffs-Appellants, v. The City of Aurora, a Municipal Corporation, et al., Defendants-Appellees.

Gen. No. 69–1.

Second District.

August 25, 1969.

Alschuler, Putnam, McWethy, Weiss & Weiler, of Aurora, for appellants.

William J. Foote and David Peskind, of Aurora, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiffs appeal from a judgment order dismissing a complaint for mandamus (for the issuance of a building permit), and for injunction (against the enforcement of the zoning ordinance and a certain prohibitory ordinance of the City of Aurora). Plaintiffs elected to stand on their complaint so that final judgment was entered.

The dispute arises from a refusal by the city to approve plaintiffs' building plans for a community building, with manager's residence attached, to be built in connection with a proposed Mobile Home Park on land in Aurora of which the plaintiff, Patrick Scully, is the contract seller and the plaintiff, High Meadows Park, Inc., is the contract purchaser and applicant for the building permit. The property is zoned M–1, Limited Manufacturing.

The pleadings establish that on September 8th, 1967, High Meadows Park, Inc. made application to the building inspector of the city of Aurora for the issuance of a building permit for the construction of a community building in connection with the development of the Mobile Home Park, and submitted a development plan for the Mobile Home Park together with a list of the proposed site improvements. On November 21st, 1967, the building commissioner denied the permit by letter which acknowledged the application for a building permit to construct a community building "for a Mobile Home Park" and advised that the application was denied for a number of reasons including,

1—Mobile homes and trailer parks are prohibited within the corporate limits of Aurora by a specific ordinance.
2—The Aurora Zoning Ordinance has no provisions in any zoning category for Mobile Homes Parks or trailer park.
3—The City Council of the City of Aurora has recently unanimously refused to consider an Ordinance providing for the construction and regulation of such parks.
4—In all events, mobile homes, trailer parks and all other dwellings used for residential purposes or human habitation are not permitted under Zoning and Building Codes in areas such as yours, Zoned M-1, limited manufacturing except those specifically allowed under Ordinance 3100, as amended, Section 13.2 and its subsections.
5—Since your application states that this building is the first step to the development of a mobile home trailer park, the permit is denied in that the land for the park has not been subdivided in accordance with the Aurora subdivision Control

Ordinance and other applicable City Ordinances and State Statutes.

6—Since this property is Zoned M–1 limited manufacturing, all construction must comply with standard specified in Fire District number 2.

. . . .

Defendants' motion to dismiss the complaint charged that the application for building permit was signed by the wrong party; that neither plaintiff was a proper party to the action; that plaintiffs failed to exhaust their administrative remedies; that the proposed construction did not meet the requirements of the Building Code; that the relief prayed was beyond the authority of the court; and that both counts of the complaint fail to state causes of action.

The court, in its order of September 3rd, 1968, granting defendants' motion to dismiss, found that the application for building permit was not proper in that it was not filed by the owner in fee simple as required under the Building Code ordinance; that both plaintiffs were proper parties; that plaintiffs had not failed to exhaust their administrative remedies; that the application did not conform to the Building Code; that the zoning ordinance of the city of Aurora was not invalid as to this particular property or all property for failure to provide for a particular use; and that there were no allegations in the complaint that the ordinance was arbitrary, unreasonable and without relation to the public health, safety, welfare and morals of the community.

The several ordinances of the city of Aurora placed in issue by the pleadings included a 1937 ordinance which completely prohibits the owner of land to permit the use thereof for the purpose of parking a trailer if used as a dwelling; and the Aurora zoning ordinance which classifies all land into zoning districts, but nowhere lists mobile home parks as a permitted use, either under the various zoning classifications or under the special use provisions.

The Building Code sets forth in an M–1 zoning classification, in Fire District No. 2, substantially greater construction restrictions than outside such fire districts.

Plaintiffs argue that the prohibition of mobile home parks by the city of Aurora within its limits is invalid as the city has not been delegated the power to prohibit this legitimate business; that neither the prohibitory ordinance nor the zoning ordinance can be used by the city to prohibit mobile home parks anywhere within the city; that the technical requirements of the Building Code based on zoning classifications cannot apply when the zoning ordinance is void for the use proposed; and that the failure of the plaintiff Scully to sign the application for a building permit, if ever required, is excused by his joining in the litigation.

The city suggests that it is not necessary to reach the question of validity of the ordinances because of failure to meet the requirements of the Building Code. The city further argues, that in any event, it is not required to provide a category for every legitimate business use, and that the legislative determination denying the mobile home park use, has not been attacked in the absence of allegations in the complaint that the ordinances are not in accordance with the general welfare. The defendant does not argue in opposition to the finding by the court below that the plaintiffs did not fail to exhaust administrative remedies.

Directing our attention to count I of the complaint, sounding in mandamus to require the building commissioner to issue a building permit, we are of the opinion that this portion of the complaint was properly dismissed. ■ ■ Mandamus is an extraordinary remedy for which a petitioner must show a clear and undoubted right to the relief demanded; and the writ is to be granted or denied in the exercise of sound judicial discretion by the court. Michigan-Grand Bldg. Corp. v. Barrett, 350 Ill 291, 306, 183 NE 205 (1932) ; Wehrmeister v. Carlman, 17 Ill App2d 171, 183, 149 NE2d 453 (1958).

225

■ Here, in addition to the ordinances, the validity of which petitioners seek to place in issue, there were requirements of the Building Code with which petitioners did not comply. The pleadings do not disclose specifically the changes petitioners would propose to make, and the allegation that *"to the extent that the petitioner's plans technically fail to comply with the requirements of Ordinance No. 3874, said petitioner is willing and able to revise said plans so they will comply,"* is insufficient to require the issuance of the discretionary writ. People v. City of Chicago, 280 Ill 576, 580, 117 NE 779 (1917); People ex rel. Delgado v. Morris, 334 Ill App 557, 563, 79 NE2d 839 (1948).

■ Similarly, the requirement of the Building Code that the application be signed by the owner, refers in normal intendment to the fee owner and not to a contract purchaser. The application here was signed by the contract purchaser only, when presented to the building commissioner. The fact that the owner joins in the suit does not relate to the propriety of the administrative officer refusing the permit when the code was violated.

The city urges that we should not consider the merits of the allegations relating to the validity of the so-called zoning and prohibitory ordinances and thereby reach a controversial issue of great importance and widespread effect, because the justified refusal of the building permit disposes of the case. In addition, the city points out that the only permit sought was for a community building, and though admittedly in connection with a mobile home park, the application for the balance of the trailer park would have to be submitted and decided at a later time.

This argument ignores count II of the complaint which, in our opinion, places the validity of the 1937 ordinance (expressly prohibiting the owner of land to permit the use thereof for the purpose of parking a trailer) and the permissive zoning ordinance (which excludes any ref-

erence to trailer parks or mobile home parks as a permitted use), directly in issue.

■ If such ordinances provide no remedy and are attacked as being void in their terms, jurisdiction over the dispute may be taken in equity and injunction is a permitted remedy. See Pringle v. City of Chicago, 404 Ill 473, 478, 89 NE2d 365 (1950) ; American Civil Liberties Union v. Chicago, 3 Ill2d 334, 352, 121 NE2d 585 (1954) ; Sinclair Pipe Line v. Village of Richton Park, 19 Ill2d 370, 379, 167 NE2d 406 (1960).

■ The city arguing that, even if the court should grant all of the relief prayed for by petitioners, petitioners would still have to obtain a permit "for the construction of the *balance* of the trailer park" (emphasis added), appears to be contending that petitioners must exhaust administrative remedies before applying for injunctive relief against the ordinances. However, the application for the permit for the community building was expressly stated, and was considered by the building commissioner, to be in conjunction with the mobile home park. While the building permit was sought only for the first phase of the project, the community building to serve the proposed park, the plans for the balance of the mobile home park were also submitted preliminary to securing State approval under the provisions of Ill Rev Stats 1967, c 111½, § 168. And when it was made clear that at least one of the grounds for the refusal of the application was that mobile home parks were not permitted and, in fact, were expressly forbidden by a prohibitory ordinance, petitioners were not required to perform the useless act of submitting a further application before applying to the court for relief. Bright v. City of Evanston, 10 Ill2d 178, 184, 139 NE2d 270 (1956) ; Bank of Lyons v. County of Cook, 13 Ill2d 493, 495, 150 NE2d 97 (1958).

The court below expressly found that petitioners had not failed to exhaust administrative remedies. This is not attacked in any direct manner in this court, and under

the circumstances, this defense would be unavailing to preclude the remedy of injunction.

■ The City of Aurora Ordinance No. 2475 prohibiting the owner of land to permit the use thereof for the purpose of parking a trailer, is a void ordinance and action under it is subject to be enjoined. Mobile Home Parks are legitimate businesses. See Camboni's, Inc. v. DuPage County, 26 Ill2d 427, 430, 187 NE2d 212 (1962) and Pioneer Trust & Savings Bank v. McHenry County, 41 Ill2d 77, 82, 86, 241 NE2d 454 (1968). "Trailer Coach Parks" are recognized as legitimate businesses under the State statute regulating them. C 111½ supra.

■ It is clear that a city has only the powers delegated to it by the State and while the State has given express permission to municipalities to "locate and regulate" the use and construction of house trailers (see Ill Rev Stats 1961, c 24, par 11–42–8), and the statute providing for the licensing of trailer parks by the State through the Department of Public Health (c 111½ supra, pars 158–185), also recognizes the power of the municipality to regulate, nowhere has authority been given to the cities to prohibit a lawful business by an ordinance directed at one type of business in a discriminatory manner. People ex rel. v. Village of Skokie, 408 Ill 397, 404, 97 NE2d 310 (1951) ; Speroni v. Board of Appeals of City of Sterling, 368 Ill 568, 572, 15 NE2d 302 (1983) ; Suburban Ready-Mix v. Village of Wheeling, 25 Ill2d 548, 550, 185 NE2d 665 (1962).

In next considering the effect of the exclusionary zoning ordinance, we do not, however, take the above cases to mean that in fact every municipality must accommodate every legitimate land use by providing a place for such use somewhere in its boundaries.

■ ■ There would appear to be no constitutional limitation on a municipality's power to exclude uses from a particular district, except that the exclusion must bear a substantial relationship to the preservation of public

228

health, safety, morals or general welfare. See People ex rel. v. Morton Grove, 16 Ill2d 183, 188, 157 NE2d 33 (1959), holding that exclusion of residences from a commercial or industrial district may be within the police power delegated to municipalities. The power to exclude on the same basis may, under conceivable facts, include all land within the boundaries of a municipality. Village of Bourbonnais v. Herbert, 86 Ill App2d 367, 371, 229 NE2d 574 (1967). See also Annotation 9 ALR2d 683.

 But it would seem equally apparent that while it may be within the lawful province of zoning to preserve a particular character of a city, this power must be exercised within constitutional limitations. It must be exercised in a nondiscriminatory manner and based upon the reasonable exercise of the police power in the public welfare. Suburban Ready-Mix v. Village of Wheeling, supra.

We believe that a recognition of the right to exclude particular legitimate uses includes the responsibility to provide a forum or remedy so that a petitioner can test whether his proposed use for a legitimate business purpose comports with the public welfare, keeping in mind the character of the classification of property in a particular municipality and tested by the traditional considerations applied to zoning ordinances to determine whether they are an unreasonable or arbitrary exercise of the police power.

The special use technique has been developed as a means of providing for infrequent types of land use which are necessary and desirable but which are potentially incompatible with uses usually allowed in residential, commercial and industrial zones, and which cannot be categorized in any given use zone without the danger of excluding beneficial uses or including dangerous ones. Kotrich v. County of DuPage, 19 Ill2d 181, 184, 185, 166 NE2d 601 (1960) ; Village of Bourbonnais v. Herbert, supra, p 372.

229

■ The zoning ordinance here provided no specific provision for the construction of mobile home parks. Nor did it provide a specific special use for that purpose—nor, indeed did it provide a residuary special use category. It thus provided no method of applying for a legitimate business use. This was beyond its delegated powers, as well as constitutionally impermissible in our opinion.

The city argues that even if it could be conceded that it has no power to prohibit mobile home parks everywhere within its limits, it does not follow that petitioners can locate in an M–1 zone; that petitioners must allege (as the trial court held) the ordinance to be against the public welfare as applied to the particular property involved. Petitioners counter with the argument that this is not a zoning case—that no claim is made that M–1 is not a reasonable classification of the property—but that the ordinances are void as prohibiting the mobile home park use and providing no method for petitioners to ask for rezoning to permit the use. If the result of declaring the ordinances void is to permit location of mobile home parks anywhere in the city, petitioners argue, or if the particular area here is unsuitable, the city has made the choice by its legislative acts and cannot be heard to complain of the result.

■ We are of the opinion that, with the purely prohibitive ordinance being void as we have indicated previously, the zoning ordinance stands on its own terms and need not be read in conjunction with a specific prohibitory ordinance. While petitioners suggest that the zoning ordinance is also a prohibitory ordinance, we believe that more properly it should be categorized as an exclusionary zoning ordinance which does not prohibit mobile home parks by its terms, but fails to make any provision for that use. In our opinion this failure does not render the zoning ordinance unconstitutional and void in its entirety.

And it may or may not be unconstitutional and void as applied to the specific property in question.

In Builders Supply & Lumber Co. v. City of Northlake, 21 Ill2d 14, 170 NE2d 597 (1960), the court stated on page 17–18:

> The complaint alleges and the answer admits that the zoning ordinance of the city of Northlake, as amended, makes no provision for the construction of a multiple-family dwelling. The zoning ordinance does not prohibit multiple-family dwellings, but fails to make any provision for such use. Plaintiff cites us to opinions of this court where we have determined that a zoning ordinance may not exclude or prohibit a legitimate use of the land. (People ex rel. Trust Company of Chicago v. Village of Skokie, 408 Ill 397; Speroni v. Board of Appeals of the City of Sterling, 368 Ill 568.) Nevertheless the evidence must indicate that the use desired, and excluded, is a legitimate use. The ordinance here in question does not prohibit multiple dwellings, it merely fails to provide for the same. It may well be that multiple dwellings may be a legitimate use of the land in some area or classification within the city of Northlake. If so, the ordinance may be unconstitutional insofar as that area or classification is concerned. The entire ordinance is not, for that reason only, rendered unconstitutional. Thus, to determine whether the ordinance is unconstitutional as it is applied to plaintiff's land, it would be necessary to prove the character of the neighborhood, the classification and the use of nearby property, the extent to which property values are diminished by the particular zoning restrictions involved, the gain to the public compared to the hardship imposed upon individual property owners, and thus determine whether the purported

231

exercise of the police power is unreasonable or confiscatory. (Galt v. County of Cook, 405 Ill 396.)

■ We feel that this approach is appropriate here. It cannot be determined on the pleadings without evidence that the zoning ordinance is void as to this property merely because a mobile home park may be shown to be a legitimate use somewhere within the boundaries of Aurora. We do find, however, that the allegations contained in count II of the complaint that the ordinances exceed the authority granted of the defendant and "are arbitrary discriminations against these petitioners and are unusual, harsh, arbitrary, oppressive, prohibitory and confiscatory and are void insofar as they relate to these plaintiffs," together with the other allegations of the complaint, sufficiently invoke the jurisdiction of the court. Equity can provide wider relief in furtherance of the public interest than when only private interests are involved. See County of DuPage v. Henderson, 402 Ill 179, 191–192, 83 NE2d 720 (1949).

We are concerned that if we were to accept plaintiff's arguments to their possible conclusion, any municipality which failed to provide a category either specifically or by special use for a legitimate business could suffer the punishment of having it possibly located in an area totally unsuited for its purpose and with resultant great damage to owners of property in the area. We do not feel that the law of supply and demand is as sufficient protection to the public and its welfare as petitioner suggests. Nor do we feel that one asking for equity should be allowed to deny equity to citizens who would suffer the damage for legislative failures of their representatives, if any other course is available to us.

Therefore, we believe that the course followed in Builders Supply & Lumber Co. v. City of Northlake, supra, should be followed here and proof can be adduced on the merits below to determine whether the exclusion of mo-

bile home parks in the area proposed is in the public interest and a proper exercise of the police power. The fact that the city has made no provision for such a use anywhere, if it continues to be the fact, would be a proper matter to consider in determining whether the zoning ordinance is enacted on the basis of concern for the public welfare or for the purpose of discriminating against a legitimate business.

If the court in its trial decides in favor of petitioners, the question of what Building Code provisions are applicable to a mobile home park would necessarily have to be reached. It is apparent that both the city building commissioner and the applicants were necessarily placed in a quandary as to what Building Code provisions would apply. In Rezler v. Village of Riverside, 28 Ill2d 142, 190 NE2d 706 (1963), the court stated on page 148:

> The necessity for special treatment of trailer parks, partaking both of commercial and residential use, has been universally recognized. Camboni's, Inc. v. County of DuPage, 26 Ill2d 427; Town of Granby v. Landry, 341 Mass 443, 170 NE2d 364 (1960).

The Building Code of Aurora obviously could not take into consideration the special nature of the mobile home park use here. It makes little sense to impose the requirements of an M–1 related fire district without consideration of the special nature of the use sought. We note that the State statute regulates the community service building in connection with a trailer coach park as well as the balance of the trailer park in its general provisions as to construction and fire protection. C 111½, supra, §§ 172.2–172.18. These provisions must be followed and, in addition, the general provisions of the Aurora code outside of the M–1 zone should be applicable to the extent shown to be reasonably related to the proposed use. If the city should enact a particular city code

provision which reasonably regulates the construction necessary to the proposed use, the applicant should be required to conform to such code.

We, therefore, affirm the judgment below as it dismisses count I of the complaint (for mandamus), but reverse the judgment below dismissing count II (for injunctive relief) with directions to proceed in accordance with this opinion.

Affirmed in part, reversed and remanded in part, with directions.

MORAN, P. J. and DAVIS, J., concur.